Stewart-D v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-104-CR
No. 10-96-105-CR

Â Â Â Â Â DEDERICK STEWART,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 82nd District Court
Robertson County, Texas
Trial Court Nos. 96-02-15,933-CR
& 96-02-15,934-CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â On May 28, 1996, we received copies of Dederick Stewart's notices of appeal and the trial
court clerk's information forms regarding each appeal.


 Tex. R. App. P. 40(b)(1). According to
these sources and motions to dismiss he filed, Stewart was convicted of delivery of a controlled
substance, cocaine, and placed on four years probation on April 8, 1996, for each conviction. On
May 23, his probation was revoked and he was sentenced to two years' confinement in a state jail
on each conviction, to be served consecutively. On June 17, 1996, he filed motions to withdraw
his notices of appeal and asks that we dismiss his appeals.
Â Â Â Â Â Â In the relevant portion, Rule 59 of the Texas Rules of Appellate Procedure states:
(b) Criminal Cases. The appeal may be dismissed if the appellant withdraws his notice
of appeal at any time prior to the decision of the appellate court. The withdrawal shall
be in writing signed by the appellant and his counsel and filed in duplicate with the clerk
of the court of appeals in which the appeal is pending . . . . Notice of the dismissal shall
be sent to the clerk of the trial court in which notice of appeal was filed. 
Id. 59(b).
Â Â Â Â Â Â Stewart and his attorney have both signed the motions, as required by the rule. Id. We have
not issued a decision. Thus, the motions are granted and his notices of appeal are withdrawn.
Â Â Â Â Â Â Stewart's appeals are dismissed. Id.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Â Â Justice Vance
Dismissed on appellant's motion
Opinion delivered and filed June 26, 1996
Do not publish



om:.0001pt;text-align:justify'>   Under current rules the trial court
may not enter a temporary injunction against a party before that party has
presented its defenses and has rested its case.Â  Tex. R. Civ. P. Ann. 681
(1967); Great Lakes Engineering, Inc. v. Andersen, 627 S.W.2d 436 (Tex. App. 1981, no writ); City of Austin v. Texas Public Emp. AssÂn, 528 S.W.2d 637
(Tex. Civ. App. 1975, no writ).Â  Under this procedure the party opposing the
temporary injunction has an opportunity to fully litigate the issue of whether
the temporary injunction should be granted prior to the granting of
such; there is no longer any reason for requiring the trial court to reexamine
the legal and factual basis of the preliminary injunction upon motion to
dissolve.Â  See Nu-Tred Tire Co. v. Dunlop Tire & Rubber Corp., 577
P.2d 268, 118 Ariz. 417 (1978).Â  The purpose of the motion to dissolve is to
provide a means to show that changed circumstances or changes in the law
require the modification or dissolution of the injunction; the purpose is not
to give an unsuccessful party an opportunity to relitigate the propriety of the
original grant.

Â 

Tober v. Turner of Texas, Inc., 668 S.W.2d 831, 836 (Tex. App.ÂAustin 1984, no
writ). 

Â Â Â Â Â Â Â Â Â  Tober also stated that a trial
court had the authority to dissolve a temporary injunction order even without a
showing of changed circumstance.Â  Id. at 835.Â  It relied upon City of
Hudson v. Ivie for this statement.Â  See City of Hudson v. Ivie,
592 S.W.2d 658 (Tex. Civ. App.ÂBeaumont 1979, no writ).Â  This statement in Tober
is dicta because the trial court in Tober did not dissolve the temporary
injunction.Â  The statement has also been criticized in another opinion, and Ivie,
on which Tober relied, has been distinguished. Â Murphy v. McDaniel,
20 S.W.3d 873, 879 (Tex. App.ÂDallas 2000, no pet.).Â  In Murphy, the
court discussed Tober and Ivie as follows:

Â Â Â Â Â Â Â Â Â  We recognize that in Tober, the
 Austin court of appeals, relying on City of Hudson v. Ivie, 592 S.W.2d
658 (Tex. Civ. App.ÂBeaumont 1979, no writ), stated that a trial court has the
authority to reverse its prior temporary injunction order absent a showing of
changed circumstances.Â  Tober, 668 S.W.2d at 835.Â  The procedural
posture of this case, however, is different from Ivie.Â  In Ivie,
the trial court granted a temporary injunction after an evidentiary hearing.Â 
Five days later, after a non-evidentiary hearing, the trial court granted the
defendantÂs motion to dissolve the injunction.Â  On the same day, the trial
court dismissed the entire proceeding.Â  The court of appeals determined that
the trial court abused its discretion in dismissing the case after holding only
a preliminary hearing.Â  However, it affirmed the trial courtÂs order dissolving
the injunction because it Âread the statement of facts containing the evidence
offered at the [temporary injunction] hearing and [could] not conclude that the
trial court abused its discretion in dissolving the temporary injunction which
had been improvidently granted a few days earlier.Â Ivie, 592 S.W.2d at
659-60.

Â 

Â Â Â Â Â Â Â Â Â  In Ivie, unlike in this case
where the time to review the order granting the temporary injunction has
expired, the court of appeals had jurisdiction to review the propriety of the
trial courtÂs decision to grant the temporary injunction.Â  The court of
appealsÂ determination that the trial court had the authority to dissolve its
previously granted temporary injunction was, in reality, a determination that
the temporary injunction had been improperly granted.Â  Such is not the case
here.Â  We do not have jurisdiction to consider the propriety of the trial
courtÂs decision to grant the temporary injunction.Â  Rather, we must presume
the trial courtÂs initial decision to grant the temporary injunction was
proper.Â  See Tober, 668 S.W.2d at 834.Â  Because we must recognize the
trial court properly granted the temporary injunction, we conclude that, absent
changed circumstances, the temporary injunction should remain in effect until a
final disposition of the partiesÂ claims.

Â 

Id. at 879

Â Â Â Â Â Â Â Â Â  The Murphy court had already
concluded that upon a showing of changed circumstances, a trial court could
dissolve a temporary injunction.Â  In the words of the court:

Â Â Â Â Â Â Â Â Â  The trial court unquestionably has the
authority to dissolve a temporary injunction upon a showing of changed
circumstances.Â  Tober, 668 S.W.2d at 834.Â  In our view, a Âchange in
circumstancesÂ refers to a change in conditions occurring since the granting of
the temporary injunction.Â  Changed circumstances may include an agreement of
the parties, newly revealed facts, or a change in the law that make the
temporary injunction unnecessary or improper. Â Cf.
Desai, 813 S.W.2d at 641-42 (dissolution of temporary injunction where
appellees showed they had been effectively excluded from participation in
operation and management of company); see also City of Tyler v. St.
Louis S.W. Ry. Co., 405 S.W.2d 330, 333 (Tex. 1966) (only trial court has
jurisdiction to modify or vacate permanent injunction based on "changed
conditions" because trial court can subpoena witnesses, take evidence, and
make findings of fact).

Â 

Id. at 878.Â  The Desai opinion relied upon in Murphy had
previously reached the same conclusion, that upon a showing of changed
circumstances, the trial court could dissolve a temporary injunction.Â  Desai
v. Reliance Mach. Works, Inc., 813 S.W.2d 640, 642 (Tex. App.ÂHouston [14th
Dist.] 1991, no pet.).

Â Â Â Â Â Â Â Â Â  Thus, we must determine if the movant,
in this case Randall, presented evidence of changed circumstances and, if so,
whether the trial court abused its discretion by dissolving the temporary
injunction based upon the evidence of changed circumstances.

The Hearing Â What Happened

Â Â Â Â Â Â Â Â Â  If you read RandallÂs brief and the
majority opinion, there was a hearing at which ample evidence was introduced,
but if the trial court erred by failing to conduct an evidentiary hearing such
that no evidence was introduced, it was PhillipÂs burden to object.

Â Â Â Â Â Â Â Â Â  I believe that even a cursory reading
of the record, and certainly a close reading of the record, will reveal that
the majority has lost their perspective of the record and what happened, and
misplaced the burden of proof and, therefore, erred in determining who has the
duty to object under the circumstances presented.

Â Â Â Â Â Â Â Â Â  To understand this, we must delve into
the reporterÂs record in some detail to see what happened at this hearing.Â 
Rather than quote long excerpts Â much of which is arguments by counsel about
the merits of the case Â as you would hope, we must focus our attention on the
procedure because that is where Phillip contends the trial court erred.

Â Â Â Â Â Â Â Â Â  Mr. Jim Dunnam and Mr. Vance Dunnam represent
Randall.Â  Mr. David Deaconson represents Phillip.

Â Â Â Â Â Â Â Â Â  The following occurred at the hearing:

THE COURT:Â  Mr. Dunnam, this is you-allÂs
motion.

Â 

Pg. 4, l.20-21.

Â 

* * *

Â 

MR. JIM DUNNAM:Â  I think I can sort of try to
get you some of the facts, most of which are, I think, undisputed to get the
Court up to speed.Â  Then I can put some proof to the same effect.

Â 

Pg. 4, l.25-pg. 5, l.1-3.

Â 

* * *

Â 

THE COURT:Â  Everything else [other than payment
of the companyÂs attorney fees] youÂre contesting?

Â 

MR. DEACONSON:Â  Yes, Your Honor.

Â 

Pg. 6, l.8-10.

Â 

* * *

Â 

MR. VANCE DUNNAM:Â  Judge, we want to invoke the
rule.

Â 

Pg. 6, l.21-22.

Â 

* * *

Â 

MR. JIM DUNNAM:Â  . . . And a lawsuit was pending
in Midland, and a dispute arose in Midland, and this is all in the prior
transcript. . . . there is actually an order to that effect which is in the
record, I believe, or if not, I can get the Court a copy. . . . IÂll provide
you with that order.

Â 

Pg. 10, l.16-18; pg. 11, l.4-6, 22.

Â 

* * *

Â 

MR. JIM DUNNAM:Â  Well, Judge Mayfield didnÂt
think so.Â  We argued that the matter should be abated because all the parties,
all of the issues Â we had the transcripts from the Midland hearings, and if
you read everything, and Mr. Deaconson will probably say this isnÂt Â but I
believe if you read the record, youÂll see that everything that was brought to
the attention of Judge Mayfield about damage to the corporation, any wrongdoing
by my client was part of the Midland debate.

Â 

Pg. 12, l.6-15.

Â 

* * *

Â 

MR. JIM DUNNAM:Â  The Midland court issued a
judgment and is done.Â  I think thatÂs right.

Â 

Pg. 14, l. 23-24.

Â 

* * *

Â 

MR. JIM DUNNAM:Â  . . . WeÂre asking the Court,
Number 1, we want to take care of this immediate situation, this injunc Â this
letter that was sent out to enjoin him again because this was basically Â this
is basically the same injunction that they got in the 109th District Court that
we presented as, Number 1, against him interfering with his use of these
shares, also a sufficient order that we can send it to these publishers to let
them know that they are to disregard it, and, Number 2, to dissolve the current
injunction because this was an injunction that was heard in February of last
year.Â  The reasons itÂs set for trial this month is because I said, ÂDavid,
weÂve got to get this thing over with.Â . . . You know, it has come to the
point where we think the injunction should be dissolved.

Â 

Pg. 18, l.25-pg. 19, l.1-13; pg. 20, l.2-3.

Â 

* * *

Â 

MR. DEACONSON:Â  Your Honor, I want to bring out
some things.Â  Judge Mayfield heard an extended hearing where he heard
testimony. . . . ThatÂs what happened.Â  Judge Mayfield saw through the efforts
and said, ÂNo, you canÂt do that because you called an illegal meeting based on
the evidence I have before me.Â  You are not the president.Â  You canÂt appoint
yourself as president.Â . . . So youÂve got a situation where evidence was
heard. . . . Very simple.Â  Judge Mayfield heard the evidence.Â  He granted the
temporary injunction, made it very clear that they are not to dispose of the
assets because one of the things that the evidence brought out in that hearing
was Randall was contacting various companies that held the assets, the money of
the company, and was trying to get access to them. . . . and the evidence you
will hear today will be that these publishers, whether this Court says that
letter is good, bad or indifferent that Phillip Roberts wrote, they hired lawyers,
they were going to take that action anyway because they feel for the last
several years since the Roberts boysÂ dad has died, they have basically had to
pay a fee and gotten absolutely nothing in return. . . . Phillip is president
before Randall tried to do that.Â  Undisputed, based on RandallÂs testimony both
in the Midland trial and at the temporary injunction hearing,

Â 

Pg.
20, l.12-14; pg. 21, l.15-19, 22-23; pg. 22, l.15-22; pg. 23, l.17-24; pg. 24,
l.16-19.

* * *

MR. DEACONSON:Â  But if you look at Â and I think
the evidence Â if you will look at the order granting the temporary injunction,
what the status quo is is that the meeting in January, and I think the evidence
is clear based on all of the transcripts of this proceeding and the CourtÂs
order, the evidence will show that the status was, the meeting in January was
not recognized as a valid meeting, so you go before that, and thus the parties
have both Â the evidence will show both have acknowledged that Phillip was
president prior to that meeting, and so therefore he acted in his capacity as
president, and thatÂs what I think the evidence will show.Â  As far as the issue
on dissolving the temporary injunction, Judge, there was a full-blown
evidentiary hearing.Â  All of this that they are submitting today, they either
had the ability to or was submitted at trial Â I mean at the temporary
injunction hearing.Â  The judge granted the temporary injunction hearing after
hearing all of the evidence.

Â 

Pg. 25, l.20-pg. 26, l.1-13.

Â 

* * *

Â 

MR. JIM DUNNAM: . . . This is the order, the
order continuing trial, David.Â  HereÂs what happened in Midland.Â  This is right
before they filed in Waco.Â  The judge in Midland issued that order.

Â 

Pg. 27, l.20-23.

Â 

* * *

Â 

MR. JIM DUNNAM:Â  . . . the dilemma for the Court
is twofold.Â  The first one is pretty simple.Â  The status quo has been and
always been that the management fee has been paid. . . . And he should be
enjoined from interfering with the operation of Roberts Publishing Company, . .
. .

Â 

Pg. 30, l.16-19, 22-24; pg. 31, l.4-5.

Â 

* * *

Â 

MR. DEACONSON:Â  Judge, obviously the Court
hasnÂt heard any evidence other than the two documents that are before it, and
thatÂs argument.Â  I do point the Court to the order, the temporary injunction
in place, and particularly the second page of that, the order where the Court
made specific orders.

Â 

Pg. 31, l.25-pg. 32, l.1-5.

Â 

* * *

Â 

MR. DEACONSON:Â  We can rehash what evidence was
or wasnÂt and what everybodyÂs position was or wasnÂt with regard to the Midland court.Â  The evidence before the Court was transcripts of the arguments of Randall
RobertsÂ attorney, and everything that shows, and the reason Judge Mayfield
ruled the way he ruled, is based on the evidence. . . . You then get to what
weÂre here today is they are basically saying, Judge, two and a half weeks
before jury trial is set, ÂLetÂs dissolve Â even though there has already been
full-blown hearings, letÂs dissolve the temporary injunction in placeÂ two and
a half weeks before trial when a trial on the merits is going to take place and
all of these issues are going to be sorted out in a full-blown trial with all
the evidence before it.Â  And the only issue that they are bringing before this
Court as to the justification for that is they are saying Phillip Roberts, by
sending that letter, has impacted this Court.

Â 

Pg. 32, l.11-17; pg. 33, l.4-15.

Â 

* * *

Â 

THE COURT:Â  Look, first of all the Court takes
judicial notice of everything in the file, and all this is in here.Â  Now, what
other Â do we really need an evidentiary hearing on this?Â  I mean, is there
anything different that the evidence Â that witnesses are going to say that
you-all havenÂt already told me?Â  Do we need an evidentiary hearing for me to
make a ruling is what IÂm asking.Â  I donÂt think we do.

Â 

MR. JIM DUNNAM:Â  I think that we have proferred
[sic] pretty well what we think the proof is going to be.

Â 

THE COURT:Â  Mr. Deaconson, are there any
witnesses you want to call for this?

Â 

MR. DEACONSON:Â  Well, I mean, IÂve got
publishers out there that are represented by that letter, and I do think, and I
donÂt think they will disagree with me, they have been conducting the quarterly
board meetings of all of these publications continuously.

Â 

Pg. 35, l.5-23.

Â 

* * *

Â 

THE COURT:Â  All right.Â  Look, I think to give
affect to what everybody agrees is a valid order from the 109th District Court
in Andrews on the estate, I think this injunction prevents that order from
being enforced or executed, so IÂm going to grant the motion to lift the
injunction, and IÂll grant your injunction, Mr. Dunnam.

Â 

Pg. 37, l.17-23.

Â 

* * *

Â 

THE COURT:Â  All right.Â  IÂm going to grant your
relief, then, and Judge Mayfield can sort this out.Â  I hope I havenÂt messed it
up much for him.Â  WeÂll see where we are.

Â 

Pg. 38, l.6-9.

Â 

* * *

Â 

MR. JIM DUNNAM:Â  And we think that [sic] what is
going to happen Â we believe what is going to happen in the estate is Randall Â
I mean Phillip.Â  IÂm sorry Â Phillip took several hundred thousand dollars out
of the estate, and because of that, we believe we will received Â the only
other significant asset are the shares we believe weÂre going to receive an
offsetting shares of those shares, but thatÂs something for that Court to
decide.

Â 

Pg. 39, l.10-18.

Â 

* * *

Â 

MR. DEACONSON:Â  ThatÂs highly disputed. . . .
They had the full opportunity to present all this stuff before Judge Mayfield
at that time.Â  They chose for whatever reason to submit only what they wanted
to submit, Â The whole purpose of the injunction was to preserve the assets of
the company overall because the issues before Judge Mayfield were the
dissipation of the assets by Randall . . . you still get back to the central
issue that Judge Mayfield dealt with, and that doesnÂt impact his ability to
continue to take care of the estate and transfer the shares as they are
supposed to be transferred.Â  If they want Â 

Â 

THE COURT:Â  It does impact his ability to be
able to deal with the publishers and to receive the management fee, and thatÂs
what IÂm Â

Â 

MR. DEACONSON:Â  Ordering the manage Â
withdrawing the issue on the management fee is one thing, but dissolving the
entire injunction is a totally different thing when you havenÂt had the benefit
of all of the evidence that was presented before Judge Mayfield and all the
evidence that is out there.Â  ItÂs one thing to say, ÂPull that letter backÂ but
another thing then to dissolve an entire injunction when youÂre two and a half
weeks away from trial.

Â 

Pg. 39, l.19; pg. 40, l.12-15, 18-21; pg. 41,
l.7-23.

Â 

* * *

Â 

THE COURT:Â  It seems to me that the injunction
that was in place is causing harm to the entire operation, perhaps to the
estate and to the company, because that letter from your client, Mr. Deaconson,
just freezes everything.

Â 

MR. DEACONSON:Â  Which is, in essence, what Judge
Mayfield did because of the issues and the evidence that was before him on how
the parties were conducting themselves, specifically in this case, Randall.Â  We
donÂt have Â this Court doesnÂt have the benefit of all that evidence.

Â 

THE COURT:Â  Well, IÂm dissolving the
injunction.Â  You-all send me the order.

Â 

Pg. 42, l.9-21.

Â 

Duties

Â Â Â Â Â Â Â Â Â  As noted at the beginning
of the hearing, it was RandallÂs motion(s).Â  The evidence necessary to obtain
relief was never presented to Judge Strother.Â  There was a lot of discussion
about what the evidence was going to be, in some instances even referencing
what evidence from prior hearings had been, but that did not make it evidence
in this proceeding.

Â Â Â Â Â Â Â Â Â  The transcripts from the earlier
hearings in Andrews (the estate), the company meeting litigation (Midland), and the earlier injunction hearing (before Judge Mayfield) were never marked as
exhibits and introduced into evidence.

Â Â Â Â Â Â Â Â Â  To suggest on this record that Phillip
did not adequately apprise the trial court that the trial court did not have
the evidence before him to either dissolve the injunction or to render judgment
for a comprehensive new injunction against Phillip ignores what went on at this
hearing.

Â Â Â Â Â Â Â Â Â  But it was not even PhillipÂs duty to
bring the evidence and get it in front of the court.Â  That was RandallÂs duty.Â 
Randall failed to introduce any evidence other than two pieces of paper which
will be more fully discussed below.Â  Everything else, literally everything
else, was a presentation to the court about the prior history of the case,
background contextual statements, generally known as an opening statement,
about what the attorneys believe the evidence will show.Â  This hearing was
defective, and Phillip directed the trial courtÂs attention to that defect.Â  See
 Austin v. Texas Public Employees Asso., 528 S.W.2d 637, 640
(Tex. Civ. App.ÂAustin 1975, no writ).

Â Â Â Â Â Â Â Â Â  I would hold that Phillip had no duty
to object to RandallÂs failure to prove his case by the presentation of
evidence.Â  Further, if for some reason the burden was on Phillip to bring to
the courtÂs attention that the court did not have before it the evidence
necessary to render the judgment, Phillip clearly did so.Â  Re-read the end of
the hearing transcript. It is clear that Phillip fulfilled his duty, if any, to
point out the error of the trial court at a time and in a manner that would
allow the trial court to correct it.Â  Tex.
R. App. P. 33.1(a).Â  That is all that is necessary.Â  Id.Â  The
trial court, as well as RandallÂs counsel, in an effort to move things along
expeditiously, fell into the trap of making arguments and rendering judgment
without any evidentiary support.Â  The trial court thus erred.Â  And Phillip
brought this error to the trial courtÂs attention.

What Is Not Evidence

Â Â Â Â Â Â Â Â Â  But the majority relies on testimony
from the prior hearings and statements from counsel as evidence.Â  I disagree.

Âprevious hearings

Â Â Â Â Â Â Â Â Â  After some discussion about the
contents of the previous order granting PhillipÂs temporary injunction, the
trial court said it would take Âjudicial notice of everything in the file.ÂÂ 
Generally, a trial court may take judicial notice of its own records in a case
involving the same subject matter between the same parties.Â  Paradigm Oil,
Inc. v. Retamco Operating, Inc., 161 S.W.3d 531, 539 (Tex. App.ÂSan Antonio
2004, pet. denied); Escamilla v. Estate of Escamilla, 921 S.W.2d 723,
726 (Tex. App.ÂCorpus Christi 1996, writ denied).Â  But what a trial court cannot
do is take judicial notice of testimony from a prior hearing at a subsequent
hearing unless a properly authenticated transcription of that prior testimony
is admitted into evidence.Â  Paradigm Oil, 161 S.W.3d at 539-540; Escamilla,
921 S.W.2d at 726.Â  

Â Â Â Â Â Â Â Â Â  In a footnote, the majority states,
without any analysis, Âwe presume that this requirement may be waived if no
objection is made to a proponentÂs failure to offer the transcription in
evidence.ÂÂ  Whether the requirement can or cannot be waived is not something to
be resolved at this juncture.Â  The point here is, no one ever asked the court
to take judicial notice of any prior testimony and the court never said it was going
to take judicial notice of any prior testimony.Â  We do not even know if
transcripts of the prior hearings were in the ÂfileÂ at the time the court made
this statement.Â  There is certainly nothing in this record to indicate their
presence at that time.Â  How can someone be required to object to something that
was never asked and never done?Â  What the court did was take judicial notice of
what was already in the courtÂs file.Â  ThatÂs itÂnothing else.Â  The testimony
from the prior hearings was not in evidence.

ÂcounselÂs statements

Â Â Â Â Â Â Â Â Â  Further, the majority erroneously relies
on statements made by RandallÂs attorney and faults PhillipÂs attorney for not
making an objection.Â  The majority uses two cases for the proposition that
normally, an attorneyÂs statements must be made under oath to be considered
evidence; but the opponent of the testimony can waive the oath requirement by failing
to object when he knows or should know that an objection is necessary.Â  Banda
v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997); Russ v. Titus Hosp. Dist.,
128 S.W.3d 332, 338 (Tex. AppÂTexarkana 2004, pet. denied).Â  I agree.Â  But
these cases are easily distinguishable from the facts of this case.

Â Â Â Â Â Â Â Â Â  In Banda, BandaÂs attorney
discussed with the court the terms and conditions of an oral settlement
agreement.Â  The Texas Supreme Court held that GarciaÂs attorney should have
known to object to the unsworn statements.Â  Banda, 955 S.W.2d at 272.Â  BandaÂs
attorney placed GarciaÂs attorney on notice with phrases such as, Âas an officer
of the court I can just state under oath whatÂwhat I am telling the court and
what my representations wereÂÂ and Âthis agreement that IÂm testifying to today
before the court as an officer of the courtÂ.ÂÂ  Id. (emphasis added by
opinion).Â  In Russ, the Texarkana Court stated that the evidentiary
nature of the statements made by RussÂs counsel was obvious.Â  Russ, 128
S.W.3d at 338.Â  Counsel offered to take the witness stand but the trial court
stated that counsel was an officer of the court.Â  The court of appeals determined
that this statement by the trial court implied there was no need to be sworn
and concluded that defense counsel waived the requirement of an oath by failing
to object.Â  Id.

Â Â Â Â Â Â Â Â Â  This case is different. Â Even a
cursory reading of the record shows that the statements made were not intended
to be evidence.Â  No one offered to take the witness stand.Â  No one prefaced or
concluded their statements by saying they were an officer of the court.Â  No one
said they were testifying.Â  No one said anything that could be inferred as
testimony.Â  No one was providing the court with testimony based on personal
knowledge.Â  The statements made to the trial court were just thatÂstatements.Â 
For example, at the beginning of the hearing, Mr. Jim Dunnam made statements
such as, ÂIf I may give the Court just a little background,Â and ÂI think I can
sort of try to get you some of the facts, most of which are, I think,
undisputed to get the Court up to speed.Â  Then I can put some proof to the same
effect.ÂÂ  Toward the end of the hearing he stated, ÂI think that we have
proferred [sic] pretty well what we think the proof is going to be.ÂÂ  These are
not statements that would put someone on notice that an attorney was presenting
testimony without being administered an oath.Â  This was not testimony.

Â Â Â Â Â Â Â Â Â  Thus, no objection was needed to prohibit
the consideration of counselÂs statements as evidence.Â  CounselÂs statements
were not evidence.

Evidence Admitted

Â Â Â Â Â Â Â Â Â  This might be the end of the
discussion.Â  However, during the course of the hearing, two exhibits were
marked, offered, and admitted into evidence.Â  There is no complaint on appeal
that these exhibits were improperly admitted into evidence.

Â Â Â Â Â Â Â Â Â  One of these exhibits was an order in
the probate proceeding of PhillipÂs and RandallÂs mother.Â  The order was signed
on January 22, 2004.Â  The hearing on PhillipÂs motion for a temporary
injunction was held on March 22, 2004, two months after the order was
rendered in the probate proceeding.Â  As a matter of law, it cannot constitute a
change in circumstances.

Â Â Â Â Â Â Â Â Â  The other exhibit admitted into
evidence was a letter dated November 22, 2004, from Phillip, as president of
the company, to the publishers of various companies.Â  The letter suspended Âthe
payment of all management fees effective immediately.ÂÂ  The letter went on to
state that:

This is being done because of the sluggish
economy that we have all been dealing with the past few years coupled with the
fact that Roberts Publishing has no management expertise available with which
to provide a management service.Â  I hope that this will provide a financial
boost to all of the properties.

Â 

Â Â Â Â Â Â Â Â Â  The problem with this second letter is
that it, alone, cannot establish a change in circumstances.Â  Unless there is
already evidence to establish current practices, dollars being transferred,
etc., there is nothing to measure whether this is a real change of
circumstances.Â  Randall certainly argued that it was.Â  But argument is not
evidence.Â  See McCain v. NME Hosps., Inc., 856 S.W.2d 751, 757 (Tex. App.ÂDallas 1993, no pet.).Â  See also Lunn
v. Baron & Budd, P.C., 1997
 Tex. App. LEXIS 1591, *8 (Tex. App.ÂDallas 1997, no pet.) (not designated for
publication) (Counsel's arguments are not evidence sufficient to support a
temporary injunction.).

Â Â Â Â Â Â Â Â Â  Therefore, I would hold that there was
no evidence before the trial court to indicate a change in circumstances
warranting the dissolution of the first temporary injunction and that the trial
court abused its discretion in doing so.

Issuance of a Second Temporary
Injunction

Â Â Â Â Â Â Â Â Â  The letter was, however, enough
evidence given the nature of the claims, for Judge Strother to enjoin PhillipÂs
pursuit to accomplish the objectives/conduct set out in the letter.Â  The
function of a temporary injunction is to maintain the status quo, which is
"the last, actual, peaceable, noncontested status which preceded the
pending controversy." Â Transport Co. of Texas v. Robertson Transports,
261 S.W. 2d 549, 553-54 (Tex. 1953); Jordan v. Rash, 745 S.W.2d 549, 555
(Tex. App.ÂWaco 1988, no writ).Â  The scope of appellate review of a temporary
injunction is limited to the narrow question of whether the action of the trial
judge in granting or denying the temporary injunction constitutes a clear abuse
of discretion.Â  Janus Films, Inc. v. Ft. Worth, 163 Tex. 616, 617 (Tex. 1962).Â  On this record, I cannot hold that the trial court abused its discretion in
returning the parties to the status quo immediately prior to the letter.

Conclusion

Â Â Â Â Â Â Â Â Â  Thus, I concur in the affirmance of
the trial courtÂs judgment to the limited extent of granting RandallÂs
temporary injunction to the suspension of the effect of PhillipÂs letter to the
publishers.Â  However, I believe the majority errs in its analysis and
conclusion that the trial court did not abuse its discretion in dissolving the
temporary injunction and must, therefore, dissent to that portion of this
CourtÂs opinion and judgment and to any injunction of Phillip beyond enjoining
the effect of the letter as above described.

Postlude

Â Â Â Â Â Â Â Â Â  This case presents a classic reason why
a trial court should not dissolve a temporary injunction absent a fundamental
change in circumstances.Â  As repeated throughout the arguments of counsel,
trial in this matter was less than three weeks away.Â  The trial schedule was
being pushed by the party restrained, Randall.Â  Randall purported to be pushing
for a final resolution of the issues.Â  Randall is now in control of the estate
and the family business.Â  Now that Randall has the control that he was seeking,
why push for a trial on the merits?Â  Why risk loss of control by a final
disposition?Â  Here we are now, almost a year later, and there has been no
trial.Â  This case languishes in the system awaiting a final disposition.Â  As
some of the cases discussing the impropriety of dissolving a temporary
injunction without a change in circumstances have stated, the best course of
conduct is not to retry the granting of the temporary injunction, it is to
obtain a final judgment on the merits of the proceeding.Â  If the temporary
injunction had not been dissolved, I have no doubt that this matter would, by
now, have a final judgment.[2]

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Concurring
opinion in part to the granting of a temporary injunction and dissenting
opinion in part to the granting of a temporary injunction and to the dissolution
of a temporary injunction delivered and filed February 8, 2006









[1]
The majority bashes PhillipÂs use of the
broad issue by asserting he is not complaining about the sufficiency of the
evidence.Â  See Maj. Op. at pg 3, fn 3.Â  They thus avoid addressing the
sufficiency of the evidence on one of the motions, but they cannot resist the
need to discuss the sufficiency of the evidence on the other motion.Â  See
Maj. Op. at pg 5 (ÂWe will conclude hereinafter that the court had sufficient
evidence before it to dissolve the injunction.Â).Â  Sufficiency of the evidence
is the result of having a deficient hearing, which is the broad issue argued by
Phillip.Â  It is the only issue that either the majority or the dissent is
reviewing.Â  As a subsidiary question, the sufficiency of the evidence is fairly
included in the issue and is appropriately addressed by the majority as to one
motion.Â  It is also relevant as to the other motion, and it should, therefore,
also be addressed.Â  Tex. R. App. P.
38.1(e), 47.1.





[2]
ÂFrom a practical standpoint, if a litigant could, by motion to dissolve, force
reconsideration of the original grant, without a showing of changed conditions,
then there is an incentive for him to do so at least once, or more often, in
hope that he will be able to wear down the resistance of the original trial
judge, or in hope that he will be able to secure a hearing before a
different trial judge who may be more sympathetic.Â  Such actions needlessly
add to the judicial caseload, both at the trial and appellate level.Â 
Recognition of the principle that the trial court has no duty to reconsider the
validity of the original grant of temporary injunction upon motion to dissolve
enables the trial court to dispose of motions to dissolve solely upon the
pleadings when the motion to dissolve, on its face, shows that the litigant
offers no new evidence.ÂÂ  Tober v. Turner of Texas, Inc., 668 S.W.2d
831, 835 (Tex. App.ÂAustin 1984, no writ)(emphasis added).